[No. AO21074. First Dist., Div. Five. Feb. 7, 1984.]

RINIC DERMEGERDICH, Plaintiff and Respondent, v.
PETER RANK, as Director, etc., Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendant and Appellant.

Robert John Hughes for Plaintiff and Respondent.

## OPINION

**LOW, P. J.**—In this case, we hold that an alien not under an order of deportation, though she is illegally in the United States, is eligible for medical benefits pursuant to Welfare and Institutions Code section 11104.[1]

Defendant Beverlee Myers[2] appeals from the judgment of the Santa Clara County Superior Court granting a writ of mandamus compelling her (as Director of the California State Department of Health Services) to set aside the decision in administrative proceedings. It was ordered that plaintiff Rinic Dermegerdich be reinstated to the California Medical Assistance Program (Medi-Cal) and that defendant retroactively pay plaintiff benefits which had been denied. We affirm.

Plaintiff is an Iranian national who suffers from multiple sclerosis. She had been receiving Medi-Cal benefits; however, in June 1981, Santa Clara County notified her that her eligibility would be discontinued effective the last day of that month. She requested an administrative hearing to protest the discontinuance. She was not under an order of deportation even though the Immigration and Naturalization Service (INS) informed the county that plaintiff entered the country as a nonimmigrant visitor on June 29, 1976, and she has been illegally in the United States since March 30, 1978.

The only issue considered by the superior court was plaintiff's eligibility for benefits pursuant to section 11104. Defendant contends that the superior court erred in determining that plaintiff was eligible for benefits because section 11104 provided that upon notification by INS of plaintiff's status as an *illegal* alien, eligibility could be terminated. We disagree, and hold that plaintiff meets the eligibility criteria specified in the statute.

At the time defendant ruled that plaintiff was ineligible for Medi-Cal benefits, section 11104 read as follows:

"Any alien who is otherwise qualified for aid shall be eligible to receive public assistance if he certifies under penalty of perjury that to the best of his knowledge he is in the country legally and is entitled to remain indefinitely, or if he certifies that he is not under order for deportation, or if he certifies that he is married to an individual not under order for deportation.

---

[1] All section references are to the Welfare and Institutions Code unless otherwise stated. Former section 11104 has been repealed and the applicable contents with minor changes are now numbered section 14007.5 (Stats. 1982, First Ex. Sess. 1981-1982, ch. 3, §§ 7, 42.)

[2] Beverlee Myers was Director of the California State Department of Health Services at the time suit was filed.

"Such certification by the alien shall, upon receipt, be forwarded to the United States Immigration and Naturalization Service for verification. Aid shall continue pending such verification. . . ."

We find no ambiguity in section 11104. *Any* alien who is otherwise qualified *shall be eligible* if he certifies under penalty of perjury either (1) he is here legally and entitled to remain indefinitely, *or* (2) he is not under order for deportation, *or* (3) he is married to an individual not under order for deportation; *such* certification shall be forwarded to INS for verification, and aid shall continue pending verification. In the instant case, plaintiff's legal representative testified under penalty of perjury that plaintiff was not under order for deportation, and defendant concedes that plaintiff has not been ordered deported. Under the clear provisions of the above statute, plaintiff is eligible.

Mere notification by INS of plaintiff's status as an *illegal* alien does not terminate her Medi-Cal eligibility. Section 11104 applies to *any* alien; i.e., the alien's status is irrelevant (except as later qualified in the section itself). An alien must, as one alternative for eligibility, certify that he or she is not under an order for deportation; under that alternative, he or she need *not* certify that he or she is here legally. The statute provides that *such* certification; i.e., *that he or she is not under order for deportation,* shall be forwarded to INS for verification. Once the above criteria are met, as in this case, the alien is eligible for benefits.

Defendant points out that regulations promulgated for purposes of administering the Medi-Cal program provide that if INS informs the county department that an alien is not legally present in the United States, the alien shall no longer be eligible. (Cal. Admin. Code, tit. 22, § 50311.) ▆ Deference is given to an interpretation by an administrative body, unless the interpretation is clearly erroneous. (*In re Kelly* (1983) 33 Cal.3d 267, 277 [188 Cal.Rptr. 447, 655 P.2d 1282].) It is this court's responsibility " 'to declare [the statute's] true meaning even if it requires rejection of an earlier erroneous administrative interpretation. [Citations.]' " (*Wheeler* v. *Board of Administration* (1979) 25 Cal.3d 600, 605 [159 Cal.Rptr. 336, 601 P.2d 568].) ▆ Here, the statutory language is unambiguous. Therefore, we decline to follow the erroneous administrative interpretation.

Defendant argues that under federal law, the Legislature cannot provide broader health care service than that authorized in the federal medical assistance grants program (Medicaid). Medicaid appropriations were made "[f]or the purpose of *enabling* each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals,

whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care . . . ." (42 U.S.C.A. § 1396, italics added.) Federal regulations provide that a state agency which receives such appropriations "must provide Medicaid to otherwise eligible residents of the United States who are—[¶] . . . (b) Aliens lawfully admitted for permanent residence or permanently residing in the United States under color of law, including any alien who is lawfully present in the United States under section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act." (42 C.F.R. § 435.402.) ■ However, federal law does not preclude the state Legislature from providing medical benefits to additional state residents. Public health is traditionally a state function. (*National League of Cities* v. *Usery* (1976) 426 U.S. 833, 851 [49 L.Ed.2d 245, 257, 96 S.Ct. 2465].) "Congress may not exercise that power [over commerce] so as to force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made." (*Id.,* at p. 855 [49 L.Ed.2d at p. 259].)

■ Our reading of section 11104 is supported by *Harrington* v. *Obledo* (1977) 72 Cal.App.3d 705 [140 Cal.Rptr. 294]. In *Harrington,* the court considered whether plaintiff Cruz, an illegal alien, was eligible for state welfare benefits under section 11104. (*Id.,* at pp. 708, fn. 2, 712-713.) The court held in part: "Ms. Cruz certified under penalty of perjury that she was not under a deportation order. Pending verification she was entitled to receive aid. Concededly, the Immigration and Naturalization Service has never advised the department *that she is under a deportation order.* Under the *clear language* of section 11104 'aid shall continue.'" (*Id.,* at p. 713, italics added.)

After the 1977 *Harrington* decision, section 11104 was changed. (Stats. 1982, First Ex. Sess. 1981-1982, ch. 3, §§ 7, 8.) Alien eligibility for Medi-Cal benefits is now governed by section 14007.5, which sets out the same criteria as former section 11104, framed in substantially identical language:

"Any alien who is otherwise eligible for health care services under this chapter shall be eligible to receive these services if the alien certifies under penalty of perjury that to the best of his or her knowledge he or she is in the country legally and is entitled to remain indefinitely, or if the alien certifies that he or she is not under order for deportation, or if the alien certifies that he or she is married to an individual not under order for deportation.

"Such certification by the alien shall, upon receipt, be forwarded to the United States Immigration and Naturalization Service for verification. Eli-

gibility shall continue pending this verification. . . ." (Stats. 1982, First Ex. Sess. 1981-1982, ch. 3, § 42.)

██ " ' " [W]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation. . . ." ' " (*Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60, 73 [160 Cal.Rptr. 745, 603 P.2d 1341]; see also *City of Long Beach* v. *Marshall* (1938) 11 Cal.2d 609, 620 [82 P.2d 362].) ██ We thus note that our decision, which applies the unambiguous provisions of the alien eligibility statute, as did the court in *Harrington, supra,* presumably reflects the current intent of the Legislature.

The judgment is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied March 8, 1984, and appellant's petition for a hearing by the Supreme Court was denied April 25, 1984.